United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TREANDOUS COTTON,                )   No. C 09-0385 WHA (PR)
                                 )
        Plaintiff,              )   **ORDER DENYING WITHOUT**
                                 )   **PREJUDICE DEFENDANTS'**
  vs.                            )   **MOTION FOR SUMMARY**
                                 )   **JUDGMENT;**
MATTHEW CATE, et al.,            )
                                 )   **DIRECTIONS TO**
        Defendants.             )   **DEFENDANTS**
_____  )

## INTRODUCTION

This is a federal civil rights action filed pursuant to 42 U.S.C. 1983 by a *pro se* state prisoner. For the reasons stated herein, defendants' motion for summary judgment is **DENIED** without prejudice. Defendants are directed to refile their summary judgment motion, along with a supplemented factual record, within 90 days from the date this order is filed.

## STATEMENT

Plaintiff alleges that defendants, employees of Salinas Valley State Prison and the California Department of Corrections and Rehabilitation ("CDCR"), have violated his federal Constitutional and statutory rights by refusing to provide him with the Kemetic (raw vegan-organic) diet his religion requires him to eat. Plaintiff is member of the

Shetaut Neter religion. According to plaintiff, Shetaut Neter requires its adherents to follow a vegan-organic Kemetic diet composed of primarily raw foods.[1] The diet prohibits consumption of meat, meat by-products (including dairy and eggs), and genetically modified or irradiated food. The Kemetic diet is unlike any diet option at CDCR institutions, and CDCR has refused to accommodate plaintiff's request for a Kemetic diet. Plaintiff is currently served the vegetarian diet, an ovo-lacto vegetarian diet that excludes meats but includes dairy and egg products.

Plaintiff specific claims are that defendants violated his constitutional rights under the (1) First Amendment's Free Exercise Clause, (2) the Fourteenth Amendment's Equal Protection Clause, and (3) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000cc. Defendants contend that the vegetarian diet is a reasonable accommodation for inmates with dietary restrictions regarding meat, and that CDCR has a compelling government interest in not providing customized diet options (Mot. for Summ. J. ("MSJ"), Maurino Decl. ¶ 18).

**ANALYSIS**

**A.    STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence

---

[1] Plaintiff need not show that eating a Kemetic diet is central to his religious beliefs or practices. *See Shakur*, 514 F.3d 878, 884 (9th Cir. 2008). Rather, he must only show that his belief is sincerely held to raise a claim under the Free Exercise Clause. If his belief is sincerely held, as the instant plaintiff has asserted, this order's inquiry into such matters is at an end. *See id.* at 884–85.

[2] FRCP 56 has been amended since defendants filed this motion for summary judgment. The Advisory Committee Notes on the 2010 Amendments state, in relevant part, that "[t]he standard for granting summary judgment remains unchanged," but the word "issue" has been replaced with "dispute" to "better reflect[ ] the focus of a summary judgment determination." Fed. R. Civ. P. 56 advisory committee's note.

2

1 for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

2 The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Ibid.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Anderson*, 477 U.S. at 252). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *Ibid.*

//
//

3

### B. PLAINTIFF'S CLAIMS

#### 1. Free Exercise

Prison inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)). "'Lawful incarceration,'" however, does bring about "'the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). A prison regulation that impinges on a prisoner's constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* sets forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:

(1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";

(2) Whether there are "alternative means of exercising the right that remain open to prison inmates";

(3) Whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and

(4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

*Turner*, 482 U.S. at 89–90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

##### a. First Turner Factor

Under the first *Turner* factor, a court must determine whether there was a "valid, rational connection" between the prison's regulation and the legitimate penological interest that is rationally related to the regulation. Simplified food service, security, and budget constraints are legitimate penological interests. *Williams v. Morton*, 343 F.3d 212, 217 (2003). It is rational to conclude that denying plaintiff his unique meal would simplify food service. Therefore, the first *Turner* factor weighs in favor of defendants. *See Shakur*, 514 F.3d at 886.

4

### b. Second Turner Factor

Under the second *Turner* factor, a court considers whether the prisoner has "alternative means by which he can practice his religion," or is "denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). It is undisputed that plaintiff is allowed to practice the other tenets of his religion. Specifically, he is allowed to worship and meditate three times per day, a process that includes (1) washing his face and hands, (2) practicing Sema yoga postures, (3) reciting the great truths, (4) chanting, and (5) practicing meditation (MSJ, Duncan Decl. Exh. H, Int. Ans. No. 8). Plaintiff is also permitted to fast on the new and full moon observances each month (*ibid.*). In addition to these alternative means, plaintiff has the option of purchasing vegan foods at the prison canteen including nuts, beans, rice, peanut butter and sunflower seeds in order to supplement his vegetarian diet (MSJ, Maurino Decl. ¶ 19). Plaintiff has not provided evidence that, other than his diet, he is disallowed from practicing his religion. This undisputed record shows that plaintiff has "retained the ability to participate in other significant rituals and ceremonies of [his] faith," and therefore has means of expressing his religion. *Ward*, 1 F.3d at 877. Accordingly, the second *Turner* factor weighs in favor of defendants.

### c. Third Turner Factor

Under the third *Turner* factor, a court considers the "impact [the] accommodation will have on guards and other inmates, and on the allocation of prison resources generally." *Ward*, 1 F.3d at 878 (citing *Washington v. Harper*, 494 U.S. 210, 225 (1990)). Defendants contend that introducing a new dietary policy, such as the one desired by plaintiff, creates new demands for prison staff, and "numerous administrative, operational, budgetary and security concerns" (MSJ, Maurino Decl. ¶ 6). As evidentiary support for this contention, defendants assert by declaration that the foods plaintiff requests "can cost anywhere from 20 to 150 percent more than similarly-produced products, and that plaintiff's proposed meal "could cost as much, or more, than the $7.97 per day inmate cost of the Jewish-kosher diet" (*id.* ¶ 15). Defendants also assert that

"[c]onceivably inmates from each religion could request their own unique religious diet" (*id.* ¶ 16). This an insufficient evidentiary showing. There is no evidence that CDCR investigated suppliers, solicited price quotes or bids, or studied in detail how accommodating plaintiff's diet would have on operating expenses. *See Shakur*, 514 F.3d at 887. Because questions of fact remain as to the cost and availability of plaintiff's diet, summary judgment is not proper at this time. As detailed below, defendants will be granted an opportunity to supplement the factual record.

### d. Fourth Turner Factor

Under the fourth and final *Turner* factor, whether the regulation is an "exaggerated response" to the prison's concerns, the prisoner must show there are "obvious, easy alternatives" to the regulation that "fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 90–91. As with the above factor, questions of fact as to cost and availability remain. Summary judgment, then, is not proper at this time. As detailed in the conclusion, defendants will be granted an opportunity to supplement the factual record. Accordingly, defendants' motion for summary judgment as to plaintiff's Free Exercise Claim is DENIED without prejudice.

### 2. Equal Protection

Plaintiff contends that defendants have violated his right to equal protection by providing the Jewish inmate community with Kosher meals while refusing to provide the Kemetic diet required by Shetaut Neter. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The Equal Protection Clause requires that an inmate who practices a minority religion be afforded a "reasonable opportunity" to pursue his faith, "comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972), as long as the inmate's religious

6

needs are balanced against the reasonable penological goals of the prison. *O'Lone*, 482 U.S. at 349; *see Allen v. Toombs*, 827 F.2d 563, 568–69 (9th Cir. 1987). While prisoners are entitled to equal protection, the court does not suggest "every religious sect or group within a prison however few in number must have identical facilities or personnel." *Jones v. Bradley*, 590 F.2d 294, 296 (1979). The prison must make a good faith accommodation in light of practical considerations. *Freeman*, 125 F.3d at 737; *Thompson v. Kentucky*, 712 F.2d 1078, 1082 (6th Cir. 1983). To succeed on an equal protection claim, a plaintiff in a section 1983 claim must additionally show that officials intentionally acted in a discriminatory manner. *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991).

It is undisputed that plaintiff enjoys the benefit of daily worship and meditation, is provided with a meat-free diet, and is free to supplement his vegetarian diet with items from the prison canteen. Equal protection does not require identical accommodations. *Jones*, 590 F.2d at 296. Yet, the only penological interest defendants advance is "maintaining a simplified, efficient food system" (MSJ at 29). In order to determine whether this is a legitimate penological interest, defendants must provide more evidence regarding the costs of providing plaintiff's diet. Defendants will be given an opportunity to do so, as detailed in the conclusion. As summary judgment is not proper at this time, defendants' motion is DENIED without prejudice.

**3. RLUIPA**

To state a claim for relief under RLUIPA, plaintiff must show that defendants have substantially burdened plaintiff's exercise of religion. 42 U.S.C. 2000cc-1(a), 2000cc-2(b). To do so, plaintiff must prove that (1) an institutionalized person's religious exercise has been affected and (2) there is a substantial burden on that person's religious exercise. *Ibid.*; *Sefeldeen v. Alameida*, 238 Fed. App'x. 204, 205–06 (9th Cir. 2007). The focus of this initial inquiry necessarily is on the <u>manner</u> in which the plaintiff's religious exercise is impacted, rather than on the reasonableness of the facility's policy or regulation. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir.

7

2005). If plaintiff meets this initial burden, the onus shifts to defendants. Government actors cannot impose a substantial burden on religion, "unless the government demonstrates that imposition of the burden on that person, assembly, or institution — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000cc-1(a).

RLUIPA is distinguishable from traditional First Amendment jurisprudence. RLUIPA expanded the reach of the protection to include "'any religious exercise,' including 'any exercise of religion, whether or not compelled by or central to, a system of religious belief.'" *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). Additionally, RLUIPA has a less deferential standard than *Turner*, requiring the government to show that the burden it imposes on religious exercise is in furtherance of a "compelling" government interest rather than simply a "legitimate" penological interest, and that it achieves the compelling interest by the least restrictive means. *Ibid.* Still, RLUIPA does not impose affirmative duties on states that would require the government to facilitate or subsidize the exercise of religion. *Mayweathers v. Newland*, 314 F.3d 1062, 1068–69 (9th Cir. 2002).

"The primary effect of RLUIPA neither advances nor inhibits religion." *Id.* at 1068-69. In properly applying RLUIPA, courts must take into account the burden that accommodations may impose upon nonbeneficiaries. *Cutter*, 544 U.S. at 720. RLUIPA does not elevate the accommodation of religious observances over an institution's need to maintain order and safety, and an accommodation must be measured so that it does not override such significant interests. *Id.* at 721. Although the Act adopted a "compelling governmental interest" standard, the context must be considered; Congress expected the courts to apply the Act with due deference to prison authorities' expertise, *id.* at 723, and prison security is a compelling state interest, *id.* at 725 n.13.

As with the above claims, the factual record needs to be supplemented in order to determine whether defendants have demonstrated that the imposition of the burden on plaintiff's religious exercise is in furtherance of a compelling governmental interest, and

8

is the least restrictive means of furthering that compelling governmental interest. Accordingly, defendants' motion for summary judgment is DENIED without prejudice.

### 4. Qualified Immunity

Defendants' contentions regarding qualified immunity will be considered if they are raised in the renewed motion for summary judgment.

## CONCLUSION

For the reasons set out above, defendants' motion for summary judgment is DENIED without prejudice. Defendants shall refile their motion for summary judgment, along with a supplemented factual record, on plaintiff's Free Exercise, Equal Protection, and RLUIPA claims within 90 days from the date of this order. As to the Free Exercise claim, defendants need not address the first two *Turner* factors, as this order has determined that they weigh in defendants' favor. The factual record could include, but is not limited to, evidence that CDCR investigated suppliers, solicited price quotes or bids, or studied in detail how accommodating plaintiff's diet would have on operating expenses. After defendants file their renewed motion for summary judgment, plaintiff shall file an opposition, if any, within 30 days of receiving a copy of the motion and defendants shall file a reply, if any, within 15 days of plaintiff's filing of an opposition.

Plaintiff's motion for a preliminary injunction (Docket No. 45), and his motion for judicial determination regarding one of the defendants (Docket No. 49) are DENIED without prejudice. Plaintiff may refile such motions with his opposition to plaintiff's motion for summary judgment. Plaintiff's motion for an extension of time to file an opposition to the instant motion for summary judgment (Docket No. 48) is **DENIED** as moot, plaintiff having filed such opposition, which is deemed timely filed. The Clerk shall terminate Docket Nos. 34, 45, 48 & 49.

**IT IS SO ORDERED.**

Dated: August   30  , 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9