UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREANDOUS COTTON,<br><br>              Plaintiff,<br><br>  vs.<br><br>MATTHEW CATE, et al.,<br><br>              Defendants. | No. C 09-0385 WHA (PR)<br><br>**ORDER GRANTING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This is a federal civil rights action filed pursuant to 42 U.S.C. 1983 by a *pro se* state prisoner. Defendants, employees of Salinas Valley State Prison and the California Department of Corrections and Rehabilitation ("CDCR"), moved for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law (Docket No. 34). That motion was denied without prejudice, and defendants were directed to refile their summary judgment motion, along with a supplemented factual record (Docket No. 57 & 58). Defendants have now refiled a renewed motion for summary judgment and have supplemented the record. For the reasons stated herein, defendants' renewed motion for summary judgment is **GRANTED**.

**STATEMENT**

Plaintiff alleges defendants violated his federal constitutional and statutory rights by refusing to provide him with the Kemetic (raw vegan-organic) diet his religion requires him to eat.[1] Plaintiff is a member of the Shetaut Neter religion. According to plaintiff, Shetaut Neter requires its adherents to follow a vegan-organic, Kemetic diet composed primarily of raw foods.[2] The diet prohibits consumption of meat, meat by-products (including dairy and eggs), and genetically modified or irradiated food.

The CDCR has refused to accommodate plaintiff's request for a Kemetic diet because it is unlike any diet option at CDCR institutions. CDCR offers four diet options: standard, vegetarian, religious-meat-alternate, and Jewish-kosher. The food brokers that currently supply food for CDCR's four diet options sell conventionally-produced food rather than organic food and provide no guarantee that the food has not been genetically modified or irradiated. Plaintiff is currently served the vegetarian diet, an ovo-lacto vegetarian diet that excludes meats but includes dairy and egg products.

Plaintiff claims that defendants, by refusing to accommodate his dietary request, violated his constitutional and statutory rights under the (1) First Amendment's Free Exercise Clause, (2) the Fourteenth Amendment's Equal Protection Clause, and (3) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000cc. Defendants contend that the CDCR has a compelling government interest in simplified food service, controlling costs, and maintaining prison security; the vegetarian diet is a reasonable accommodation for inmates with dietary restrictions regarding meat; and rather than providing customized diets for every inmate, CDCR's four diet options are the least restrictive means of accommodating the greatest number of inmates' religious

---

[1] A vegan or vegetarian diet is not necessarily based on a religious belief (MSJ, Maurino Decl. ¶¶ 18–19), though such diets are often linked with various religions, *see* http://en.wikipedia.org/wiki/Veganism.

[2] Plaintiff need not show that eating a Kemetic diet is central to his religious beliefs or practices. *See Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). Rather, he must only show that his belief is sincerely held to raise a claim under the Free Exercise Clause. If his belief is sincerely held, as the instant plaintiff has asserted, this order's inquiry into such matters is at an end. *See id.* at 884–85.

and dietary needs while maintaining adequate prison security (Renewed Mot. for Summ. J. ("MSJ") at 1–2).

## ANALYSIS

### A.   STANDARD OF REVIEW

Summary judgment is proper when the pleadings, discovery, and affidavits demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,

---

[3] FRCP 56 has been amended since defendants filed this motion for summary judgment. The Advisory Committee Notes on the 2010 Amendments state, in relevant part, that "[t]he standard for granting summary judgment remains unchanged," but the word "issue" has been replaced with "dispute" to "better reflect[] the focus of a summary-judgment determination." Fed. R. Civ. P. 56 advisory committee's note.

3

387 (9th Cir. 2010) (*citing Anderson*, 477 U.S. at 252). A "genuine issue for trial" exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 n.4.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. *Ibid.*

**B.  CLAIMS**

**1.  Free Exercise**

Prison inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)). "'Lawful incarceration,'" however, does bring about "'the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Ibid.* (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). A prison regulation that impinges on a prisoner's constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* sets forth four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests:

> (1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates";
>
> (3) Whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and

4

> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

*Id.* at 89–90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

### a.     **First Turner Factor**

Under the first *Turner* factor, a court must determine whether there was a "valid, rational connection" between the prison's regulation and the legitimate penological interest that is rationally related to the regulation. *Id.* at 89. Simplified food service, budget constraints, and prison security are legitimate penological interests. *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003). It is rational to conclude that denying plaintiff his unique meal would simplify food service. Therefore, the first *Turner* factor weighs in favor of defendants. *See Shakur*, 514 F.3d at 886.

### b.     **Second Turner Factor**

Under the second *Turner* factor, a court considers whether the prisoner has "alternative means by which he can practice his religion" or is "denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). It is undisputed that plaintiff is allowed to practice other tenets of his religion. Specifically, he is allowed to worship and meditate three times per day, a process which includes (1) washing his face and hands, (2) practicing Sema yoga postures, (3) reciting the great truths, (4) chanting, and (5) practicing meditation (MSJ, Duncan Decl. Exh. E, Int. Ans. No. 8). Plaintiff is also permitted to fast on the new and full moon observances each month (*ibid.*). Although there is a dispute as to whether purchasing foods at the prison canteen would help satisfy plaintiff's religious dietary needs (*see, e.g.*, MSJ, Maurino Decl. ¶ 20; Decl. Cotton Supp. Opp'n to Defs.' Renewed MSJ ("Cotton Decl.") ¶ 25), plaintiff has not provided evidence that, other than his diet, he is disallowed from practicing his religion. This record shows plaintiff has "retained the ability to participate in other significant rituals and ceremonies of [his] faith" and therefore has means of expressing his religion. *Ward*, 1 F.3d at 877. Accordingly, the second *Turner* factor weighs in favor of defendants.

5

### c. **Third Turner Factor**

Under the third *Turner* factor, a court considers the "impact [the] accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally." *Ward*, 1 F.3d at 878 (citing *Washington v. Harper*, 494 U.S. 210, 225 (1990)). Plaintiff suggests Whole Foods Market in Monterey, California, could provide all the necessary vegan-organic foods that would satisfy the dietary requirements of his religion (Cotton Decl. ¶ 31).

Defendants argue "CDCR is financially and operationally unable to provide for every type of unique religious diet that inmates request," such as the one desired by plaintiff (MSJ, Maurino Decl. ¶ 17). As evidentiary support for this contention, defendants note that Whole Foods Market in Monterey is, however, fifty miles away from Salinas Valley Prison, where plaintiff is currently incarcerated (*id.* ¶ 11). Second, plaintiff's diet is costly. The CDCR's Food Administrator designed a vegan-organic, Kemetic dietary menu that would satisfy the nutritional requirements for an adult male of plaintiff's age (*id.* ¶ 10). The Food Administrator calculated food, labor, and other related costs as if purchases were being made at Whole Foods Market in Monterey (*see id.* ¶¶ 10–14). Based on plaintiff's request that his diet consist of 80% raw fruits and vegetables, defendants assert the total cost for ordering, delivering, preparing, and storing plaintiff's requested diet would be approximately $52,554.95 to $63,126.95 per year (*id.* ¶ 14).[4] In contrast, the average cost of feeding each inmate per year is $1655 (*id.* ¶ 15).[5] Rather than disputing this disparity in costs, plaintiff raises in his opposition that there are additional locations where vegan-organic foods can be purchased (Cotton

---

[4] This is based on a $9,464 to $10,816 labor cost for shopping for the food, a $28,740 to $37,960 labor cost for preparing the food, a $9,500.95 cost for purchasing the food from Whole Foods Market in Monterey, and a $2600 cost for gas and vehicle wear and tear (MSJ, Maurino Decl. ¶ 14). The labor costs were calculated using a base of $20 per hour for a correctional supervising cook's salary, plus 30% for employee benefits (*id.* ¶¶ 11–12). The cost of gas and vehicle wear and tear were calculated using a base of fifty cents per mile (*id.* ¶ 11).

[5] This is calculated by taking CDCR's total yearly food budget of approximately $240 million, which includes both food and related labor costs, and dividing it by the 145,000 inmates that CDCR is responsible for feeding.

6

Decl. ¶ 31). Supported only by his own declaration, plaintiff makes the conclusory assertion that shopping at Grocery Outlet could also satisfy plaintiff's requested diet and that other locations could be provided if the Neterian Temple is contacted (*ibid.*). Although defendants do not dispute any facts alleged by plaintiff, plaintiff fails to demonstrate how this newly-raised declaration provides him with sufficient evidence to allow a jury to find in his favor on this issue. Plaintiff has not provided any evidence that the cost of shopping at Grocery Outlet, or any other additionally-proposed location, would be cheaper than the undisputed costs of purchasing at Whole Foods Market in Monterey. Without a sufficient evidentiary showing by plaintiff to show a genuine dispute, no reasonable jury could find that the evidence weighs in favor of plaintiff.

Furthermore, defendants contend the administrative difficulties in accommodating plaintiff's request would be substantial. Unlike the major food brokers and vendors currently contracting with CDCR, Whole Foods Market is not a registered food vendor with the State of California and will not deliver food to CDCR prisons (MSJ, Maurino Decl. ¶ 11). Indeed, plaintiff admits he does not know of any registered vendors that provide vegan-organic foods to CDCR prisons (Cotton Decl. ¶ 32). This includes plaintiff's consideration of Grocery Outlet (*ibid.*). Thus, a member of the prison staff would be required to drive one hundred miles round trip to Whole Foods Market in Monterey, for example, to shop for and purchase the food (MSJ, Maurino Decl. ¶ 11), despite the fact that CDCR's supervising cooks are neither hired nor trained to grocery shop for inmates and are not even required to have a driver's license (*id.*, Hendrick Decl. ¶ 3). Finally, CDCR's correctional staff helps maintain prison security because their presence in the prisons deters inmates from inappropriate behavior (*id.* ¶ 4). All correctional staff have custodial responsibilities including the direct supervision of inmates (*id.* ¶ 3). As part of the correctional staff, supervising cooks must also supervise inmates in addition to preparing and serving food (*ibid.*). As such, defendants assert that requiring supervisory cooks to grocery shop for inmates at any location beyond the prison will detract them from their custodial responsibilities and thereby adversely affect

7

1 prison safety and security (*id.* ¶¶ 2–4). Again, plaintiff has not provided evidence
2 showing these administrative burdens are contrived, nor has he shown that the evidence
3 demonstrates a genuine dispute of fact. Accordingly, the third *Turner* factor weighs in
4 favor of defendants.

          d.      <u>Fourth Turner Factor</u>

6 Under the fourth and final *Turner* factor, whether the regulation is an
7 "exaggerated response" to the prison's concerns, the prisoner must show there are
8 "obvious, easy alternatives" to the regulation that "fully accommodates the prisoner's
9 rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 90–91.
10 Plaintiff's only suggested alternative is that defendants purchase vegan-organic foods
11 from either Whole Foods Market in Monterey or Grocery Outlet in order to provide for
12 plaintiff's requested Kemetic diet (Cotton Decl. ¶ 31). However, plaintiff fails to
13 demonstrate that such accommodations could be made at *de minimis* cost to CDCR. In
14 fact, plaintiff fails to submit any proposed cost calculations whatsoever. In contrast,
15 defendants' evidence indicates that fully accommodating plaintiff's religious, dietary
16 needs would cost approximately $52,554.95 to $63,126.95 per year when shopping at
17 Whole Foods Market in Monterey, whereas CDCR is currently only allocating $1655 per
18 year to feed each inmate (MSJ, Maurino Decl. ¶¶ 14–15). Because there is no triable
19 dispute as to the financial burden of providing for plaintiff's requested accommodation,
20 the fourth *Turner* factor weighs in favor of defendants.

21 Even viewing the evidence in the light most favorable to plaintiff, plaintiff has
22 failed to demonstrate the existence of a "genuine issue for trial" as to his Free Exercise
23 claim. *Anderson*, 477 U.S. at 249. Accordingly, defendants are entitled to judgment as a
24 matter of law, and their renewed motion for summary judgment in regards to this claim
25 is GRANTED.

8

### 2. Equal Protection

Plaintiff contends defendants have violated his right to equal protection by providing Jewish and Muslim inmates with Kosher and religious-meat-alternate meals, respectively, while refusing to provide the Kemetic diet required by Shetaut Neter (Pl.'s Opp'n to Defs.' Renewed MSJ ("Opp.") 6–7). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The Equal Protection Clause requires an inmate who practices a minority religion to be afforded a "reasonable opportunity" to pursue his faith, "comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Cruz v. Beto*, 405 U.S. 319, 322 (1972), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison. *O'Lone*, 482 U.S. at 349; *see Allen v. Toombs*, 827 F.2d 563, 568–69 (9th Cir. 1987). While prisoners are entitled to equal protection, the court does not suggest "every religious sect or group within a prison however few in number must have identical facilities or personnel." *Jones v. Bradley*, 590 F.2d 294, 296 (9th Cir. 1979). The prison must make a good faith accommodation in light of practical considerations. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997); *Thompson v. Kentucky*, 712 F.2d 1078, 1082 (6th Cir. 1983). To succeed on an equal protection claim, a plaintiff in a section 1983 claim must additionally show officials intentionally acted in a discriminatory manner. *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991).

Plaintiff contends that "[t]he dietary accommodations made specifically for Jewish and Muslim inmates alike, but not for Neterian inmates including plaintiff, suffice to permit an inference of intentional animus and lack of good faith by the CDCR" (Opp. at 7). However, as support plaintiff has only offered assertions that he made requests for a vegan-organic, Kemetic diet, that defendants reviewed his administrative

9

appeals, and that he was informed no vegan diet option existed and the only meat-free option is the vegetarian diet (Am. Compl., Ex. A at 1–2).

This is insufficient to show animus. If it were, every denial of a inmate request would constitute a showing of animus. Moreover, defendants do not dispute CDCR's food diet options do include a religious-meat-alternate and Jewish-kosher diet, but do not include a Neterian diet. Rather, defendants assert these meals are purchased from one of the major food vendors — U.S. Foodservice, Sysco, and Highland Wholesale Foods (MSJ, Maurino Decl. ¶ 8). These food vendors compete for contracts to supply and deliver food to CDCR prisons so that CDCR can negotiate prices and purchase in bulk quantities, thereby taking advantage of economies of scale (*see id.* ¶¶ 7–9). Whole Foods Market, on the other hand, is not a registered food vendor, will not deliver food to CDCR prisons, and CDCR would not be purchasing from Whole Foods Market in bulk quantities at lower-than-retail costs (*id.* ¶¶ 11, 16). CDCR would be paying approximately $52,554.95 to $63,126.95 per year to satisfy plaintiff's requested accommodation while the average annual cost to feed each inmate remains at $1655 (*id.* ¶¶ 14–15). Plaintiff admits he does not know of any registered vendors that specialize in providing vegan-organic foods (Cotton Decl. ¶ 32). This includes plaintiff's consideration of Grocery Outlet, plaintiff's other proposed shopping location (*ibid.*). It is reasonable to conclude that purchasing for Kosher and religious-meat-alternate diets from registered food vendors, while not providing plaintiff's vegan-organic, Kemetic diet, would still be consistent with defendants' interests in simplified food service, controlling budget costs, and prison security. Also, the record is bare of any evidence regarding the number of Neterians at plaintiff's prison, or whether any Neterians have requested a special diet. Furthermore, plaintiff's being allowed to practice his religion in other ways shows noninterference in religious practice, rather than animus toward such practice.

Even viewing the evidence in the light most favorable to plaintiff, plaintiff has failed to demonstrate the existence of a "genuine issue for trial" as to his Equal

10

Protection claim. *Anderson*, 477 U.S. at 249. Accordingly, defendants are entitled to judgment as a matter of law, and their renewed motion for summary judgment in regards to this claim is GRANTED.

### 3. RLUIPA

To state a claim for relief under RLUIPA, plaintiff must show defendants have substantially burdened plaintiff's exercise of religion. 42 U.S.C. 2000cc-1(a), 2000cc-2(b). To do so, plaintiff must prove (1) an institutionalized person's religious exercise has been affected, and (2) there is a substantial burden on that person's religious exercise. *Ibid.*; *Sefeldeen v. Alameida*, 238 Fed. App'x. 204, 205–06 (9th Cir. 2007). Although RLUIPA does not define "substantial burden," the Ninth Circuit holds "a burden is substantial under RLUIPA when the state 'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717–18 (1981)). The focus of this initial inquiry necessarily is on the *manner* in which the plaintiff's religious exercise is impacted, rather than on the reasonableness of the facility's policy or regulation. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). If plaintiff meets this initial burden, the onus shifts to defendants. Government actors cannot impose a substantial burden on religion "unless the government demonstrates that imposition of the burden on that person — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000cc-1(a).

RLUIPA is distinguishable from traditional First Amendment jurisprudence. RLUIPA expanded the reach of the protection to include "any 'religious exercise,' including 'any exercise of religion, whether or not compelled by or central to, a system of religious belief.'" *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). Additionally, RLUIPA has a less deferential standard than *Turner*, requiring the government to show that the burden

11

it imposes on religious exercise is in furtherance of a "compelling" government interest rather than simply a "legitimate" penological interest, and that it achieves the compelling interest by the least restrictive means. *Ibid.* Still, RLUIPA does not impose affirmative duties on states that would require the government to facilitate or subsidize the exercise of religion. *Mayweathers v. Newland*, 314 F.3d 1062, 1068–69 (9th Cir. 2002).

"The primary effect of RLUIPA neither advances nor inhibits religion." *Ibid.* In properly applying RLUIPA, courts must take into account the burden that accommodations may impose upon nonbeneficiaries. *Cutter*, 544 U.S. at 720. RLUIPA does not elevate the accommodation of religious observances over an institution's need to maintain order and safety, and an accommodation must be measured so that it does not override such significant interests. *Id.* at 721. Although the Act adopted a "compelling governmental interest" standard, the context must be considered; Congress expected the courts to apply the Act with due deference to prison authorities' expertise, *id.* at 723, and prison security is a compelling state interest, *id.* at 725 n.13.

A triable dispute still exists as to whether plaintiff can meet his initial burden of proving defendants have substantially burdened his exercise of religion. As previously stated, the religious practice of Shetaut Neter requires plaintiff to follow a vegan-organic, Kemetic diet that excludes meat, meat by-products, and genetically modified or irradiated food (MSJ, Duncan Decl., Ex. D). Defendants allege the denial of plaintiff's Kemetic diet does not amount to a substantial burden because he is offered a vegetarian diet, which, although it contains meat by-products like dairy and eggs, it excludes meat and includes fruits, vegetables, beans, and grains (MSJ, Maurino Decl. ¶ 19). Defendants also assert plaintiff is allowed to supplement his vegetarian diet with additional vegan foods from the prison canteen (*id.* ¶ 20). Even if this were true, defendants are not entitled to judgment as a matter of law solely on these bases. It is undisputed that eating CDCR's current vegetarian option is inconsistent with plaintiff's religious practice because plaintiff is likely to consume non-organic, genetically modified, or irradiated food (MSJ, Duncan Decl., Ex. D, Pl.'s Resp. Def.'s Req. Admis.,

12

No. 5). As the vegetarian meal is the only meat-free alternative offered by CDCR, plaintiff is forced to accept this option over the others, "'thereby putting substantial pressure on [petitioner] to modify his behavior and to violate his beliefs.'" *Shakur*, 514 F.3d at 888 (quoting *Thomas*, 450 U.S. at 718). Therefore, the fact that vegan ingredients may be available for purchase at the prison canteen as a "supplement [to] the vegetarian diet option" (MSJ, Maurino Decl. ¶ 20), rather than as a substitute, does not demonstrate an absence of evidence to support plaintiff's initial burden under RLUIPA. Because there is sufficient evidence to support a finding that plaintiff's religious practice has been substantially burdened, the onus shifts to defendants. *See* 42 U.S.C. 2000cc-2(b).

Although a genuine issue exists as to whether defendants have substantially burdened plaintiff's exercise of his religion, plaintiff has failed to respond to defendants' evidence which addresses whether imposition of the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. As stated above, prison security is a compelling governmental interest. *Cutter*, 544 U.S. at 725 n.13. All CDCR correctional staff, including supervising cooks, have custodial responsibilities including supervision of inmates (MSJ, Hendrick Decl. ¶ 3). The presence of correctional staff within prisons deters inmates from engaging in inappropriate behavior (*id.* ¶ 4). Because Whole Foods Market will not deliver food to CDCR prisons, a member of the prison staff would be required to drive to Whole Foods Market in Monterey to shop for plaintiff's requested diet (MSJ, Maurino Decl. ¶ 11). The same problem would arise if purchases were made at Grocery Outlet, as plaintiff admits he does not know of any registered vendors that would provide vegan-organic foods to CDCR prisons (Cotton Decl. ¶ 32). Requiring supervisory cooks to grocery shop for inmates at any location beyond the prison will detract them from their custodial responsibilities and thereby adversely affect prison safety and security (MSJ, Hendrick Decl. ¶¶ 2–4). Therefore, limiting inmates to the currently-available CDCR diets, which are delivered directly to the prisons by registered food vendors, is the least restrictive

means of maintaining the same number of correctional staff to ensure prison security. Finally, defendants' evidence indicates they actually considered and rejected a customized diet for plaintiff by designing a vegan-organic, Kemetic dietary menu and priced the cost of purchasing the food at Whole Foods Market in Monterey, as plaintiff had suggested (*id.*, Maurino Decl. ¶ 10). The evidence shows that the total cost for ordering, delivering, preparing, and storing plaintiff's requested diet would be approximately $52,554.95 to $63,126.95 per year compared to the $1655 per year that is spent on the average inmate (*id.* ¶¶ 14–15). This is a sufficient showing under RLUIPA. *Greene*, 513 F.3d at 989–90 ("Prison officials must show that they 'actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. If prison officials meet that standard, the prison regulation passes muster under RLUIPA, regardless of the burden it imposes on religious exercise" (citation omitted).). Plaintiff neither disputes the financial cost of shopping at Whole Foods Market in Monterey, nor does he provide any evidence demonstrating that it would be cheaper to shop at Grocery Outlet or any other additionally-proposed location. Accordingly, defendants' burden under RLUIPA is met.

Even viewing the evidence in the light most favorable to plaintiff, plaintiff has failed to demonstrate the existence of a "genuine issue for trial" as to his RLUIPA claim. *Anderson*, 477 U.S. at 249. Accordingly, defendants are entitled to judgment as a matter of law, and their renewed motion for summary judgment in regards to this claim is GRANTED.

**4. Qualified Immunity**

Defendants contend they are entitled to qualified immunity because their conduct did not violate a clearly-established constitutional or statutory right.

Qualified immunity shields "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering the defense of qualified

14

immunity must determine (1) whether the alleged facts show that the official's conduct violated a constitutional right, taken in the light most favorable to the party asserting the constitutional violation and (2) whether that right was clearly established such that a reasonable officer would have understood he was violating that right. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Ibid.*

For the reasons already stated above, plaintiff has failed to show that the denial of his vegan-organic, Kemetic diet constitutes a violation of the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, or RLUIPA. As such, it is unnecessary to consider whether a reasonable officer would have understood that he was violating a clearly-established right in denying plaintiff his requested diet. *Ibid.* Accordingly, defendants are entitled to qualified immunity as to all claims.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Docket No. 58) is GRANTED in favor of all claims against all defendants.

Plaintiff's motion for reconsideration of the order extending time (Docket No. 71), and his motion for a preliminary injunction (Docket No. 73), are DENIED. As evidenced by his opposition to the motion for summary judgment, plaintiff has had adequate time and resources to effectively respond to defendants' motion.

Plaintiff's motion for the appointment of counsel (Docket No. 72) is DENIED. The decision to request counsel to represent an indigent litigant under § 1915 is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984). A finding of the "exceptional circumstances" of the plaintiff seeking assistance requires an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004).

1  Neither the need for discovery, nor the fact that the pro se litigant would be better served
2  with the assistance of counsel, necessarily qualify the issues involved as complex. *See*
3  *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997). Plaintiff has not shown that
4  exceptional circumstances exist in this case.

5  The Clerk shall terminate Docket Nos. 58, 71, 72, and 73, enter judgment in favor
6  of defendants, and close the file.

7  **IT IS SO ORDERED.**
8  Dated: March  26  , 2012     
                                 WILLIAM ALSUP
9                                UNITED STATES DISTRICT JUDGE